

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3752 | **DATE** | 8/19/2004 |
| **CASE TITLE** | Joann Smith vs. Household Automotive Finance | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Judgment is entered in favor of the appellant Joann Smith.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 2 0 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 6 |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | 2004 AUG 19 PM 3:52 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOANN SMITH, | ) | |
| | ) | |
| Debtor-Appellant, | ) | |
| | ) | |
| v. | ) | No. 04 C 3752 |
| | ) | |
| HOUSEHOLD AUTOMOTIVE FINANCE | ) | Judge Ruben Castillo |
| CORPORATION, | ) | |
| | ) | |
| Creditor-Appellee. | ) | |

*DOCKETED AUG 20 2004*

## MEMORANDUM ORDER AND OPINION

The Appellant and Debtor Joann Smith seeks review of a discrete legal question: should exempt property that a Chapter 7 debtor wants to redeem from a secured creditor be valued at its wholesale or its replacement value? The bankruptcy judge who presided over Smith's bankruptcy acknowledged that "all prior opinions by experienced and astute judges" held that a debtor should pay the property's wholesale value, but held—notwithstanding his personal feelings—that the Supreme Court's decision *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997), required the debtor to pay the property's replacement value. For the reasons provided below, we find that *Rash* is not controlling precedent. Accordingly, we reverse and remand.[1]

## RELEVANT FACTS

Smith filed for Chapter 7 bankruptcy in December 2003. She claimed a personal exemption for her 2000 Plymouth Neon. The Appellee and Creditor Household Automotive Finance Corporation holds a security interest in her car. Smith sought to redeem her car under

---

[1] Even though the Appellee never filed a responsive brief, we decided this appeal consistent with Federal Rule of Appellate Procedure 31 because it presented a pure legal question. *See* 5 Am. Jur. 2d Appellate Review § 576 (2004).

11 U.S.C. § 722 at its wholesale value.[2] The bankruptcy judge, however, ruled that Smith can only redeem her car at 90% of its replacement value.[3] Because the replacement value of Smith's car is higher than its wholesale value, Smith promptly appealed.

## ANALYSIS

The appeal concerns the interpretation of 11 U.S.C. § 506(a). This section provides that a court must value property "in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a). It governs valuations made under Chapter 7's redemption provision, 11 U.S.C. § 722, and Chapter 13's cramdown provision, 11 U.S.C. § 1325(a)(5)(B). Chapter 7's redemption provision enables a debtor to redeem exempt property intended for personal, family, or household use from a secured creditor, but requires the debtor to pay the creditor the amount of the allowed secured claim. Chapter 13's cramdown provision enables a debtor to retain possession of secured property over a creditor's objection, but requires the debtor to pay the creditor the present value of the collateral over the life of the repayment plan.

The Supreme Court, in *Rash*, interpreted § 506(a) in relation to valuations made under Chapter 13's cramdown provision. The Court succinctly summarized its holding at the start and conclusion of its analysis.

> In such a "cram down" case, we hold, the value of the property (and thus the amount of the secured claim under § 506(a)) is the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller.

---

[2] Wholesale value, also known as foreclosure or liquidation value, is the amount a creditor would realize after foreclosing on the property and selling it.

[3] Replacement value, also known as retail value, is the amount a buyer would have to pay to buy comparable property.

2

> . . .
> In sum, under § 506(a), the value of property retained because the debtor has exercised the § 1325(a)(5)(B) "cram down" option is the cost the debtor would incur to obtain a like asset for the same "proposed . . . use."

520 U.S. at 960, 965. The language used by the Court establishes that its interpretation of § 506(a) is limited to the Chapter 13 cramdown context. If the Court intended for its interpretation of § 506(a) to apply throughout the Bankruptcy Code it would not have included the limiting clauses "[i]n such a 'cram down' case" and "because the debtor has exercised the § 1325(a)(5)(B) 'cram down' option." To the contrary, the Court, consistent with § 506(a)'s requirement that valuation should be determined "in light of the purpose of the valuation," limited its holding to Chapter 13's cramdown provision.

*Rash*'s rationale lends further support to our conclusion that its holding is limited to the Chapter 13 cramdown context. The *Rash* Court adopted the replacement-value standard because:

> the replacement-value standard accurately gauges the debtor's "use" of the property. It values the creditor's interest in the collateral in light of the proposed [repayment plan] reality: no foreclosure sale and economic benefit for the debtor derived from the collateral equal to . . . its [replacement] value. The debtor in this case elected to use the collateral to generate an income stream. That actual use, rather than a foreclosure sale that will not take place, is the proper guide under a prescription hinged to the property's "disposition or use."

*Id.* at 963. The Court reasoned that the debtor, in order to retain the property, should pay what it would cost to replace it because the debtor will use the property to generate income. A debtor should not be able to pay a below-market price to access a competitive marketplace. In sum, the Court adopted the replacement-value standard because Chapter 13 cramdown property is used to generate income.[4]

---

[4] The Court did not consider the specific facts and circumstances of the underlying case; to the contrary it expressly rejected a facts and circumstances valuation standard, which it

3

This rationale does not apply in the Chapter 7 redemption context. A Chapter 7 debtor can only redeem "tangible personal property intended primarily for personal, family, or household use." 11 U.S.C. § 722. Income generation is not a permissible use of redeemed property. Some personal property indirectly facilitates income generation—transportation to and from work is an excellent example—but this indirect benefit is not an accurate measure of the value of redemption property. Because redeemed property does not directly generate income, *Rash*'s rationale is not transferable to the Chapter 7 context. Therefore, the replacement-value standard does not similarly measure the value of the debtor's use of redemption property.[5]

The *Rash* Court also stated that the wholesale-value standard was inconsistent with cramdown property's "disposition or use" because the property's wholesale value fails to incorporate the inherent risks created by the debtor's retention of the property.[6] 520 U.S. at 962.

---

described as a "ruleless approach." *Id.* at 965 n.4.

[5] We need not definitively determine for the purposes of the present appeal which valuation standard most accurate measures the value of the debtor's use of redemption property. The narrow question before the Court is *Rash*'s scope. However, we do find that § 722's legislative history strongly indicates that the wholesale-value standard is consistent with the "purpose of the valuation." 11 U.S.C. § 722.

> [Redemption] amounts to a right of first refusal on a foreclosure sale of the property involved. It allows the debtor to retain his necessary property and avoid high replacement costs, and does not prevent the creditor from obtaining what he is entitled to under the terms of his contract.

H.R. Rep. No. 95-595, at 127 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6088. While the *Rash* Court gave no weight to the legislative history of § 506(a) because it found it "unedifying, offering snippets that might support either standard of valuation," 520 U.S. at 963 n.4, the legislative history of § 722 is straight-forward and quite edifying.

[6] In addition to rejecting the wholesale-value standard, the *Rash* Court also rejected the facts and circumstances approach used by the Second Circuit in *In re Valenti*, 105 F.3d 55, 62-63 (2d Cir. 1997), and the split-the-difference approach used by the Seventh Circuit in *In re*

> If a debtor keeps the property and continues to use it, the creditor obtains at once neither the property nor its value and is exposed to double risks: [t]he debtor may again default and the property may deteriorate from extended use.

*Id.* The Chapter 7 creditor, however, does not face the same risks because he receives the property's value at the time of redemption.[7] There is no risk of default and only a minimal risk of depreciation while redemption is pending. The limited presence of these double risks in the Chapter 7 redemption context makes the wholesale-value standard significantly more consistent with the property's "proposed disposition or use." Therefore, the Court's rationale for rejecting the wholesale-value standard in the cramdown context applies with minimal force to the redemption context.

Lastly, we note that the *Rash* Court indicated that the wholesale-value standard rendered the key words "disposition or use" meaningless because it "attributes no significance to the different consequences of the debtor's choice to surrender the property or retain it." *Id.* In other words, using the wholesale-value standard would make the property's use irrelevant because the property's surrender value and the property's retention value would both be the property's wholesale value. The Court did not, however, rely extensively on this argument. Rather it relied

---

*Hoskins*, 102 F.3d 311, 316 (7th Cir. 1996). 520 U.S. at 964-65, 965 n.4. A different Northern District of Illinois bankruptcy judge, in *In re Stark*, 311 B.R. 750, 757 (Bankr. N.D. Ill. 2004), recently adopted the *Hoskins* split-the-difference approach under § 722. While *Rash* is not controlling for the reasons provided herein, we find that the Court's rationale for rejecting the split-the-difference approach applies throughout the Bankruptcy Code. *Rash*, 520 U.S. at 965 (stating that "§ 506(a) supplies a governing instruction less complex than the Seventh Circuit's 'make two valuations, then split the difference' formulation"). Therefore, the split-the-difference approach is inconsistent with *Rash*.

[7] While some circuits permit a debtor to redeem property by being current on loan payments, *In re Boodrow*, 126 F.3d 43, 53 (2d Cir. 1997); *In re Parker*, 139 F.3d 668, 672-73 (9th Cir. 1998), this option is not available in the Seventh Circuit, *In re Edwards*, 901 F.2d 1383, 1387 (7th Cir. 1990).

5

heavily on the property's "proposed disposition or use," which it called of "paramount importance" and of "prime significance." *Id.* at 962-63. Appropriately, we have focused our analysis on the property's "proposed disposition of use" and have not endeavored to determine the precise effect each valuation standard would have on the choices facing a Chapter 7 debtor seeking to redeem exempt property.[8]

## CONCLUSION

*Rash*'s holding and rationale are both limited to Chapter 13's cramdown provision. The bankruptcy judge incorrectly concluded that he was bound by *Rash* in the Chapter 7 context. Accordingly, we reverse and remand. The experienced bankruptcy judge is now free to value Smith's Plymouth Neon consistent with both the law and his common sense approach to this dispute. Smith is accorded another opportunity to offer the appropriate evidence of her car's value, and the Clerk of this Court is instructed to enter judgment, under Federal Rule of Civil Procedure 58, in favor of the Appellant Joann Smith.

ENTERED: *[signature]*

Judge Ruben Castillo
United States District Court

Dated: **August 19, 2004**

---

[8] Unlike a Chapter 13 debtor, a Chapter 7 debtor may retain property by either reaffirming his debt or redeeming it. According to the legislative history of § 722, this extra choice is exceedingly significant to the operation of the redemption provision. H.R. Rep. No. 95-595, at 127 ("In consumer cases, very often a secured creditor . . . uses the threat of foreclosure to obtain a reaffirmation of a debt.").